Mark H. Howard, #1549
William B. Ingram, #10803
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah  84111
Telephone:  (801) 532-7080
Facsimile:   (801) 596-1508
*Attorneys for the Western Defendants*

IN THE UNITED STATES DISTRICT COURT,

IN AND FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD B. TALMAGE, ANNETTE C. TALMAGE, WESTERN LAND & LIVESTOCK, LLC, and WESTERN RESERVE MORTGAGE, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [31] MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Case No. 1:16-cv-19<br><br>Judge David Nuffer |

THIS MATTER comes before the Court on the Motion to Set Aside Entry of Default[1] (Motion to Set Aside) filed by Defendants Western Land & Livestock, LLC (Western Land) and Western Reserve Mortgage, LLC (Western Reserve) (together the "Western Defendants"). Having considered the written submissions of the parties, the Court hereby GRANTS the Motion to Set Aside.

---

[1] Docket no. 31, filed July 29, 2016.

## BACKGROUND

On February 18, 2016, the Government filed the complaint in this case to reduce federal tax assessments to judgment against Defendants Ronald B. Talmage and Annette C. Talmage (together, the "Talmages") and to foreclose federal tax liens against certain real property located in Liberty, Utah (the "Liberty Property").[2] The Liberty Property is titled to Western Land, and Western Reserve has recorded a trust deed against the property. The Government claims that the Western Defendants are the purported nominees and/or alter egos of the Talmages, who have resided at the Liberty Property. The Government also claims that Western Land's title to the Liberty Property and Western Reserve's trust deed are fraudulent as to the United States. The Western Defendants dispute these claims.

On August 26, 2016, the Court entered default judgment against the Talmages.[3] Therefore, the only remaining claim in this case is whether the Government may foreclose the Liberty Property under 26 U.S.C. § 7403 to satisfy the Talmages' tax liabilities.[4]

Service of process upon the Western Defendants was completed on March 2, 2016, through the entities' registered agent. On April 29, 2016, the Government requested entry of default against the Western Defendants, which was entered by the Clerk of Court on May 6, 2016, pursuant to Federal Rule of Civil Procedure 55(a).[5] The Court has not entered default judgment against the Western Defendants under Rule 55(b).

---

[2] Complaint to Reduce Federal Tax Assessments to Judgment and Foreclose Federal Tax Liens on Real Property, docket no. 2, filed February 2, 2016.
[3] Order Granting United States' Motion for Default Judgment Against Defendants Ronald B. Talmage and Annette C. Talmage, docket no. 38, filed August 26, 2016.
[4] United States' Response to Motion to Set Aside Entry of Default at 2 (Response to Motion), docket no. 45, filed October 14, 2016.
[5] Default Certificate, docket no. 17, filed May 6, 2016.

The Western Defendants have submitted evidence stating the following in support of the Motion to Set Aside: The Western Defendants are owned and managed by non-party John Wadsworth through various entities, which are operated and controlled by him. Mr. Wadsworth lives outside of the continental United States and does business in various international locations. Because of travel related to his business, it is common for several months to pass before Mr. Wadsworth receives mail and other correspondence. During the months that the complaint was filed and default was entered, Mr. Wadsworth was embroiled in an international investigation uncovering a multi-million-dollar embezzlement and Ponzi scheme perpetrated by Ron Talmage against Mr. Wadsworth and other investors in Asia. The investigation distracted Mr. Wadsworth's attention from emails that may have otherwise made him aware of the lawsuit. As such, Mr. Wadsworth did not understand that a complaint had been filed against the Western Defendants until July 2016, when he attempted to evict Ron Talmage from the Liberty Property and take possession. As soon as Mr. Wadsworth learned of the lawsuit, he engaged counsel and motioned the Court to set aside the entry of default (the Motion to Set Aside). The Government has opposed the Motion to Set Aside.[6]

## DISCUSSION

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause[.]" The good cause required for setting aside an entry of default under Rule 55(a) poses a lesser standard than excusable neglect, which must be shown for relief from default judgment under Rule 60(b).[7] In determining whether good cause exists, the court considers three factors: "(1) whether the default was willful; (2) whether defendant has a

---

[6] Response to Motion.
[7] *Dennis Garberg & Assocs. v. Pack-Tech Intl. Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997).

meritorious defense; and (3) whether any prejudice will result to the nondefaulting party if relief is granted."[8]  Because defaults are disfavored, the court resolves disputes connected with a motion to set aside default in favor of the defendant "so as to encourage a decision on the merits."[9]

Applying this standard, and resolving all doubts in favor of the Western Defendants, the Court grants the Motion to Set Aside.  First, the written submissions of the Western Defendants, which includes the signed declaration and deposition testimony of Mr. Wadsworth, show that the entry of default was not willful.  Because of his international business travel and being consumed by the investigation of Ron Talmage in Asia, Mr. Wadsworth was not aware of the lawsuit until July 2016 when he attempted to take possession of the Liberty Property.  As soon as he learned of the lawsuit, Mr. Wadsworth engaged legal counsel who promptly notified the Government and filed the Motion to Set Aside.  Thereafter, Mr. Wadsworth cooperated with the Government by providing documents evidencing ownership of the Western Defendants through his various entities and the purchase of the Liberty Property.  Mr. Wadsworth also agreed to sit for a deposition even though discovery in this case has not yet commenced.  These circumstances are vastly different than those in the cases cited by the Government, which have denied relief under Rule 55(c).[10]  Instead, they show Mr. Wadsworth's good faith actions under a time of extreme personal difficulty and justify setting aside the entry of default.

---

[8] *Heber v. U.S.*, 145 F.R.D. 576, 577–78 (D. Utah 1992).
[9] *Id.* (citation omitted).
[10] *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (finding the defendant "had actual knowledge of the filing of the complaint" and was avoiding service and that his "attorneys monitored the court docket"); *Hunt v. Ford Motor Co.*, 65 F.3d 178, at *4 (10th Cir. 1995) (finding that the defendant, who never appeared in the case, had "receiv[ed] actual notice of the complaint [and] demonstrated a willful disregard for the court").

Second, in response to the Government's foreclosure claim, the Western Defendants have raised several affirmative defenses and claims in an answer and counterclaim for quiet title.[11] These defenses and claims assert that the Western Defendants hold valid title and a security interest in the Liberty Property and are not the purported alter egos or nominees of the Talmages. The answer also asserts that the Government cannot prove its claim by clear and convincing evidence.[12] This pleading is supported by the testimony of Mr. Wadsworth, which states, among other things, that he organized the Western Defendants; that the Liberty Property is 100% owned by the Western Defendants, which are in turn owned by entities and trusts that Mr. Wadsworth owns and controls; that Ron Talmage has never been involved with the real estate business of Mr. Wadsworth or the Western Defendants; that Mr. Wadsworth negotiated and performed all due diligence and made the decision to purchase the Liberty Property; that Mr. Wadsworth used his own funds and personal guarantee to acquire the Liberty Property; that the Liberty Property was leased to "Mrs. Chen" (the purported wealthy patron related to Ron Talmage's embezzlement and Ponzi scheme) and not to the Talmages; that Ron Talmage was only involved in the lease of the Liberty Property as the purported trustee of Mrs. Chen; that the Western Defendants paid for all utilities and taxes on the Liberty Property and paid for improvements and repairs; that the improvements performed by Ron Talmage were either discussed with Mr. Wadsworth or performed without his knowledge; and that when lease payments ceased and the embezzlement and Ponzi scheme were discovered, Mr. Wadsworth shut off the utilities and attempted to take possession of the Liberty Property (the Government has not opposed this

---

[11] Western Defendants' Answer and Counterclaim, docket no. 49, filed October 28, 2016.
[12] See U.S. v. Tingey, 716 F.3d 1295, 1304 (10th Cir. 2013) (stating that the Government has the burden to prove a constructive trust and nominee claim "by clear and convincing evidence"); In re Taylor, 133 F.3d 1336, 1341 (10th Cir. 1998) (same); see also id. at 1338 (stating that a fraudulent transfer claim also requires proving "actual fraud by a clear and convincing standard").

eviction).  Construing these defenses and testimony in favor of the Western Defendants,[13] the Court finds that they have a meritorious defense.

Finally, by granting the Motion to Set Aside, the Government will not suffer prejudice. The Court assumes that when this lawsuit was filed, the Government did so with the understanding that it would be required to prove the merits of its claim.[14]  The Government still has the opportunity to litigate its claim.

---

[13] *Crapnell v. Dillon Cos., Inc.*, no. 14-cv-01713-KLM, 2015 WL 328524, at *8 (D. Colo. Jan. 23, 2015) ("In determining whether a defendant has [a] sufficiently meritorious defense to set aside an entry of default, 'the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual dispute, if true, would constitute a defense in the action.'" (quoting *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978)).

[14] *Heber*, 145 F.R.D. at 578.

## ORDER

For the foregoing reasons, the Motion to Set Aside is GRANTED and the Court orders as follows:

1. The Clerk's Default Certificate[15] is VACATED and set aside;

2. The United States' Motion for Default Judgment Against Defendants Western Land & Livestock, LLC and Western Reserve Mortgage, LLC[16] is MOOT; and

3. The Western Defendants' Answer and Counterclaim[17] is deemed filed and the Government shall have 21 days from the date of this Order to file an answer to the counterclaim.

Signed November 22, 2016.

BY THE COURT

David Nuffer
United States District Judge

---

[15] Docket no. 17, entered May 6, 2016.
[16] Docket no. 24, filed July 15, 2016.
[17] Docket no. 49, filed October 28, 2016.