UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>       Plaintiff,<br>v.<br><br>RONALD B. TALMAGE; ANNETTE C. TALMAGE; WESTERN LAND & LIVESTOCK, LLC; and WESTERN RESERVE MORTGAGE, LLC,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:16-cv-19-DN-PMW<br><br>Chief District Judge David Nuffer<br>Chief Magistrate Judge Paul M. Warner |

  Chief Judge David Nuffer referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court are two motions: Defendants Western Land & Livestock, LLC's and Western Reserve Mortgage's (collectively, the "Western Entities") Request for Scheduling Conference and Motion for Protective Order[2] and (2) Plaintiff United States' Motion for Relief from Standard Protective Order.[3]

  On March 15, 2017, the court held a hearing on the motions.[4]  The Western Entities were represented by William B. Ingram and Alan R. Houston.  Lindsay L. Clayton and Jennifer Y. Golden represented the United States.  At the conclusion of the hearing, the court took the motions under advisement.  Now being fully advised, the court renders the following Memorandum Decision and Order.

---

[1] Dkt. No. 57.
[2] Dkt. No. 70.
[3] Dkt. No. 79.
[4] Dkt. No. 114.

## BACKGROUND

In August 2016, the United States obtained a $20 million default judgment against accused tax cheats Ronald B. Talmage and Annette C. Talmage (the "Talmages").[5] The current dispute involves the government's attempt to foreclose on real property located in Liberty, Utah ("Liberty Property").[6] The government contends that the Liberty Property was purchased by John Wadsworth ("Mr. Wadsworth") and the Western Entities at the direction of Ronald Talmage.[7] The government claims that the Talmages resided at the Liberty Property in the months leading up to this lawsuit.[8] Furthermore, in response to the Western Entities' motion for summary judgment, the government has outlined a complex web of ownership of both the Western Entities and the Liberty Property that the government claims demonstrates that the Western Entities are the nominees, alter egos, or fraudulent transferees of the Talmages.[9]

The Western Entities dispute any relationship with the Talmages that would subject them to the Talmages' tax liabilities. The Western Entities claim that Mr. Wadsworth holds 100% of the beneficial ownership interest in the Western Entities.[10] The Western Entities contend that the Talmages have never been involved in the Western Entities' business or the purchase of the Liberty Property. The Western Entities assert that Mr. Wadsworth has "made all decisions to purchase the Liberty Property, negotiate the [Real Estate Purchase Contract], close on the property, pay the mortgage, pay the property taxes, pay and shut off the utilities, lease out the property, and evict the Talmages."[11]

---

[5] Dkt. No. 38.
[6] Dkt. No. 2 at ¶ 53.
[7] *See id.* at ¶¶ 60–65.
[8] *Id.* at ¶ 70.
[9] Dkt. No. 77 at 7, 9–10.
[10] Dkt. No. 64 at 6.
[11] *Id.* at 11.

Aside from the Liberty Property dispute, Mr. Wadsworth claims he was the victim of a Ponzi scheme perpetrated by Ronald Talmage.[12] Mr. Wadsworth is allegedly endeavoring to recover embezzled funds from Ronald Talmage on behalf of himself and other purported victims.[13]

On December 19, 2016, the Western Entities filed a motion for summary judgment.[14] In response, the government filed a Rule 56(d) motion seeking to delay the Western Entities' motion until discovery could be conducted.[15] On March 6, 2017, Judge Nuffer granted the government's Rule 56(d) motion and stayed the Western Entities' motion until more discovery could be accomplished.[16]

## DISCUSSION

The parties disagree on the scope of discovery, the length of discovery, and the application of the court's Standard Protective Order. For the reasons that follow, the Western Entities' Request for Scheduling Conference and Motion for Protective Order is granted. At this stage, the court is not convinced that this case warrants a protracted discovery plan encompassing dozens of witnesses and years of discovery. Additionally, the United States' Motion for Relief from Standard Protective Order is granted in part and denied in part. The court believes a modified protective order is more than sufficient to ameliorate the government's recordkeeping and reporting concerns.

### A. The Western Entities' Motion for Scheduling Conference and Protective Order

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

---

[12] Dkt. No. 49 at ¶ 18.
[13] *Id.* at ¶ 18(m).
[14] Dkt. No. 64.
[15] Dkt. No. 88.
[16] Dkt. No. 106.

Fed. R. Civ. P. 26(b)(1).  Importantly, however, discovery must be "proportional to the needs of the case." *Id.*  The factors that weigh on proportionality are: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*  The "proportionality concept seeks to 'eliminate unnecessary or wasteful discovery,' and to impose 'careful and realistic assessment of actual need.'" *Swasey v. W. Valley City*, No. 2:13-CV-768 DN, 2016 WL 6947021, at *1 (D. Utah Sept. 6, 2016) (citing Chief Justice John Roberts, 2015 Year—End Report on the Federal Judiciary at 7, *available at* https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf (last visited Mar. 14, 2017)).  In essence, the proportionality limitation requires "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Id.*

In this case, the parties' Rule 26(f) report identifies the following subjects where the parties agree discovery is appropriate:

> (i) the interests, if any, of Ronald B. Talmage, Annette C. Talmage, and/or the Western [Entities] in the Liberty Property; (ii) the circumstances surrounding the purchase of the Liberty Property in September 2011; (iii) the involvement of Ronald B. Talmage, Annette C. Talmage, and John Wadsworth with the Liberty Property; (iv) the ultimate ownership of the Western [Entities] and any of their parent/subsidiary entities, including whether John Wadsworth is the beneficial owner of these entities; and (v) the source of funds used to purchase the Liberty Property in September 2011.[17]

Apart from these agreed upon topics, the parties disagree on the complexity and scope of discovery.

---

[17] Dkt. No. 65 at ¶ 2(a).

The government disagrees that topics identified in the Rule 26(f) report should be the outer limits of discovery. Mr. Wadsworth has claimed he was the victim of a Ponzi scheme perpetrated by Ronald Talmage.[18] Therefore, the government argues that discovery should also include allowing the government to seek information regarding whether "Ronald B. Talmage defrauded John Wadsworth and/or various Japanese Investors in a multimillion-dollar Ponzi scheme."[19] The government believes that to determine whether the Western Entities are the nominees, alter egos, or fraudulent transferees of the Talmages, the government must be permitted to explore the Western Entities' relationship with Ronald Talmage in depth.[20]

Moreover, the government argues that discovery in this case is complex. The government alleges that the purchase of the Liberty Property involved a complicated real estate transaction involving several entities. The government has identified several witnesses—many of which are abroad—who are necessary to understand the complex ownership structure of the Liberty Property and the Western Entities.[21] The government argues that some depositions will need to be obtained using The Hague Convention. The government contends that utilizing The Hague Convention is a lengthy process warranting an extended discovery period. Moreover, the government argues that this case is not about a single parcel of property. Rather, this case involves a $20 million default judgment and a complex real estate transaction that may demonstrate the Western Entities have aided and abetted the Talmages in avoiding their tax liabilities.[22]

The Western Entities, however, claim this is a simple case of ownership and a routine discovery plan is more than necessary to resolve this dispute. The Western Entities claim that

---

[18] Dkt. No. 49 at ¶ 18.
[19] Dkt. No. 65 at ¶ 2(a).
[20] Dkt. No. 73 at 8.
[21] *Id.* at 6–7.
[22] *Id.* at 5–6.

the Liberty Property is worth roughly $600,000. Moreover, the Western Entities contend that "[a]lthough this case is set against a backdrop of the [Talmages'] embezzlement and Ponzi scheme—of which . . . [Mr.] Wadsworth is a victim—that history is a collateral matter to the discrete claim in this case; namely, whether the Government can show the Talmages have a property interest in the Liberty Property according to the laws of the state of Utah."[23] The Western Entities argue that the government's proposed discovery plan is not proportional to the amount in controversy or the simplicity of the case.

Based on their competing views, the parties offer the following discovery plans.

|  | **Government Proposal** | **Western Entities Proposal** |
|---|---|---|
| **Duration:** | 2 Years | 6 Months |
| **Depositions:** | 40 | 10 |
| **Interrogatories, Requests for Admission, and Requests for Production:** | 100 | 25 |

The court has reviewed the parties' dispositive motions and carefully weighed the factors pertaining to proportionality. The court finds that a routine discovery plan will be sufficient to resolve this dispute. The court agrees with the Western Entities that at its core this dispute involves a single property worth approximately $600,000 and the government's ability to foreclose on the property. Pragmatically, the Talmages are no longer in this dispute. This is not a case about a $20 million tax default judgment. Rather, this case is about a single parcel of property and whether the government can demonstrate that the Western Entities are the nominees, alter egos, or fraudulent transferees of the Talmages.

---

[23] Dkt. No. 70 at 3–4.

Resolving the Liberty Property's true ownership may involve a complex real estate transaction and may require some exploration into Mr. Wadsworth's Ponzi scheme accusations. However, the court is not satisfied that the government's extended discovery plan is warranted in light of the amount in controversy and the burden and expense an extended discovery plan will likely entail. Moreover, the court is aware of the difficulties posed by the use of The Hague Convention. However, in the court's experience, working with The Hague Convention is typically not as lengthy of a process as the government argues. Accordingly, the court is not persuaded that two years of discovery is necessary merely because there is a possibility that the government will seek to depose foreign witnesses.

Based on the forgoing, the court imposes the following Scheduling Order.

1. **DISCOVERY LIMITATIONS**

| | |
|---|---|
| Last day to serve written discovery: | August 15, 2017 |
| Close of fact discovery: | September 15, 2017[24] |
| Maximum number of depositions by Plaintiff: | 10 |
| Maximum number of depositions by Defendants: | 10 |
| Maximum hours for each deposition: | 7 |
| Maximum number of interrogatories: | 25 |
| Maximum number of requests for admission: | 25 |
| Maximum number of requests for production: | 25 |

---

[24] The court has extended the discovery period to accommodate any scheduling delays caused by this discovery dispute.

### 2. EXPERT DISCLOSURE, REPORTS, AND DISCOVERY

| | |
|---|---|
| Reports and disclosures on issues for which a party bears the burden of proof. | July 17, 2017 |
| Rebuttal Reports | August 15, 2017 |
| Deadline to complete expert deposition and expert discovery cutoff. | October 16, 2017 |

### 3. MOTION DEADLINES

| | |
|---|---|
| Deadline to file dispositive motions: | November 17, 2017 |
| Deadline to file motions in limine seeking the exclusion of expert testimony, i.e. Daubert Motions: | December 18, 2017 |

### 4. PRETRIAL DISCLOSURES

| | |
|---|---|
| Rule 26(a)(3) disclosure deadline – Plaintiff: | 40 days prior to Final Pretrial Conference |
| Rule 26(a)(3) disclosure deadline – Defendant: | 30 days prior to Final Pretrial Conference |
| Special Attorney Conference on or before: | 14 days prior to Final Pretrial Conference |
| Settlement Conference on or before: | 14 days prior to Final Pretrial Conference |

### 5. TRIAL

| | |
|---|---|
| Final pre-trial conference: | March 19, 2018 at 2:00 pm |
| Trial (10 days): | April 2, 2018—April 13, 2018 |

The court wishes to emphasize that this scheduling order is not set in stone. As the case progresses, facts may come to light that will justify more or even less discovery. The court is willing to amend the discovery plan if either party can present concrete evidence why the discovery plan should be amended. The court strongly encourages the parties to stipulate to reasonable amendments to the discovery plan as needed. The court should be the forum of last resort for resolving any future discovery disputes.

### B. Government's Motion for Relief from the Court's Standard Protective Order

In all civil cases, the District of Utah has imposed the automatic entry of a Standard Protective Order to avoid unnecessary delays in discovery.  *See* DUCivR 26-2(a).  Under DUCivR 26-2(a)(2), "[a]ny party or person who believes that substantive rights are being impacted by application of the rule [entering a Standard Protective Order] may immediately seek relief."  As soon as practical, a party seeking relief from the Standard Protective Order must demonstrate why good cause exists to suspend the application of DUCivR 26-2(a).  *See United States v. RaPower-3 LLC*, No. 2:15-cv-828-DN, 2016 WL 5121754, at *2 (D. Utah Sept. 20, 2016).

In previous cases, the court has held that the court's Standard Protective Order may violate the government's substantive rights.  *See id.*; *Callister Nebeker & McCullough v. United States*, No. 2:14-CV-00919-TC-DBP, 2016 WL 1089242, at *3 (D. Utah Mar. 18, 2016).  For instance, in *United States v. RaPower-3 LLC*, the government sought relief from court's Standard Protective Order.  2016 WL 5121754, at *1.  The government argued that the Standard Protective Order interfered with the government's reporting and recordkeeping obligations.  *Id.*  The court held that the government had provided the court good cause to suspend the application of the DUCivR 26-2(a).  *Id.* at *3.  However, the court declined to draft a modification and instead ordered the parties to negotiate a modified protective order to ameliorate the government's concerns.  *Id.* at *3; *see also Callister Nebeker & McCullough*, 2016 WL 1089242, at *3.

Like *RawPower-3 LLC*, the United States is seeking to suspend the application of DUCivR 26-2(a).  The government argues that the Standard Protective Order violates the government's rights by: (1) prohibiting Department of Justice employees from complying with

their obligations to report violations or suspected violations of law; (2) prohibiting Department of Justice employees from sharing information with other government employees or contractors assisting with litigation; (3) requiring the parties to unnecessarily disclose consulting experts and prematurely disclose testifying experts; and (4) interfering with the Department of Justice's recordkeeping requirements.[25] Additionally, the government contends that the Western Entities are abusing the confidentiality protections in the Standard Protective Order.[26] Moreover, the government argues that because the parties have been unable to negotiate a modified protective order, the solution is to eliminate the use of a protective order altogether.[27]

The Western Entities agree that the Standard Protective Order may violate the government's substantive rights.[28] However, the Western Entities argue that the court should impose a modified protective order.[29] The Western Entities contend that a modified protective order could address each of the government's concerns while providing a method for the parties to conduct discovery efficiently. Prior to filing the instant motions, the parties attempted to negotiate modifications to the Standard Protective Order to address the government's concerns.

The court finds that the government has demonstrated good cause why DUCivR 26-2(a) should be suspended. However, the court declines to completely disregard the use of a protective order. It would be nonsensical to forgo the efficiency and protections of a protective order merely because the parties are at an impasse. The court has reviewed the parties' submissions. The court agrees with the government that a tolling provision is appropriate in this case. The court has intervened on several disputes regarding confidentiality designations.

---

[25] *Id.* at 7–11.
[26] *Id.* at 11–13.
[27] Dkt. No. 93 at 5 ("[R]equiring further negotiations would serve no purpose, and complete relief from the Standard Protective Order is warranted.").
[28] *See* Dkt. No. 86 at 2–3.
[29] *Id.*

Against this backdrop, a tolling provision is reasonable and serves as a built-in deterrent to avoid future abuse of the protective order. Accordingly, the United States' Motion for Relief from Standard Protective Order is granted in part and denied in part. The court will file a modified protective order contemporaneous with this opinion.

## CONCLUSION

Based on the forgoing, the Western Entities' Request for Scheduling Conference and Protective Order[30] is **GRANTED**. The United States' Motion for Relief from Standard Protective Order[31] is **GRANTED IN PART AND DENIED IN PART**.

As an aside, in December 2016 the local rules for the District of Utah were amended. As of December, all civil discovery disputes must follow the short form discovery motion procedure outlined in DUCivR 37-1. Accordingly, any future discovery motions filed in this case must comport with DUCivR 37-1.

**IT IS SO ORDERED.**

DATED this 17th day of March, 2017.

BY THE COURT

_____
Paul M. Warner
Chief United States Magistrate Judge

---

[30] Dkt. No. 70.
[31] Dkt. No. 79.