UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>RONALD B. TALMAGE, et al.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING SHORT FORM DISCOVERY MOTION**<br><br>Case No. 1:16-cv-19-DN-PMW<br><br>Chief District Judge David Nuffer<br>Chief Magistrate Judge Paul M. Warner |

Chief Judge David Nuffer referred this matter to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Defendants Western Land & Livestock, LLC's and Western Reserve Mortgage's (collectively, the "Western Entities") Short Form Motion to Compel the Government to Respond to Document Requests.[2] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[3]

## BACKGROUND

In August 2016, the United States obtained a $20 million default judgment against accused tax cheats Ronald B. Talmage and Annette C. Talmage (the "Talmages").[4] The current dispute involves the government's attempt to foreclose on real property located in Liberty, Utah ("Liberty Property").[5] The government contends that the Liberty Property was purchased by John Wadsworth ("Mr. Wadsworth") and the Western Entities at the direction of Ronald

---

[1] Dkt. No. 57.
[2] Dkt. No. 130.
[3] Pursuant to DUCivR 7-1(f) and DUCivR 37-1, the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.
[4] Dkt. No. 38.
[5] Dkt. No. 2 at ¶ 53.

1

Talmage.[6] The government claims that the Talmages resided at the Liberty Property in the months leading up to this lawsuit.[7] Furthermore, in response to the Western Entities' motion for summary judgment, the government has outlined a complex web of ownership of both the Western Entities and the Liberty Property that the government claims demonstrates that the Western Entities are the nominees, alter egos, or fraudulent transferees of the Talmages.[8]

The Western Entities dispute any relationship with the Talmages that would subject them to the Talmages' tax liabilities. The Western Entities claim that Mr. Wadsworth holds 100% of the beneficial ownership interest in the Western Entities.[9] The Western Entities contend that the Talmages have never been involved in the Western Entities' business or the purchase of the Liberty Property. The Western Entities further assert that Mr. Wadsworth has "made all decisions to purchase the Liberty Property, negotiate the [Real Estate Purchase Contract], close on the property, pay the mortgage, pay the property taxes, pay and shut off the utilities, lease out the property, and evict the Talmages."[10]

During the beginning stages of discovery, the parties disputed the breadth of discovery required to resolve this dispute. The government argued that the purchase of the Liberty Property involved a complicated real estate transaction encompassing several entities. Therefore, the government requested an extended discovery plan to accommodate the needs of the case.[11] Specifically, the government requested that each party be granted 40 depositions and 100 interrogatories, requests for admission, and requests for production.[12] Conversely, the Western Entities were adamant that the government's case was a straightforward case of

---

[6] *See id.* at ¶¶ 60–65.
[7] *Id.* at ¶ 70.
[8] Dkt. No. 77 at 7, 9–10.
[9] Dkt. No. 64 at 6.
[10] *Id.* at 11.
[11] Dkt. No. 115 at 5.
[12] *Id.* at 6.

ownership and, therefore, a routine discovery plan was more than necessary to resolve this dispute.[13]

The court agreed with the Western Entities and found that the government had failed to demonstrate that a protracted discovery plan was warranted in "light of the amount in controversy and the burden and expense an extended discovery plan [would] likely entail."[14] Accordingly, the court granted each side 10 depositions and 25 interrogatories, requests for admission, and requests for production.

On April 14, 2017, the Western Entities served the government with their First Set of Discovery Requests.[15] The Western Entities asked the government to respond to 7 interrogatories, 10 requests for production, and 18 requests for admission.[16] The government refused to respond to any of the Western Entities' requests for production on the grounds that the Western Entities' document requests exceeded the court's imposed limit of 25.[17]

**DISCUSSION**

The present motion is the fifth discovery motion the court has refereed over the course of six months.[18] The present discovery dispute is even more unattractive than its predecessors. The Western Entities' motion to compel argues that the government erred by refusing to respond to any of their requests for production based on the government's opinion that responding to some requests would waive objections to other requests.[19] The Western Entities ask the court to compel the government to produce documents responsive to the Western Entities' first 25 requests for production (as calculated by the government) and to organize the documents in the

---

[13] *Id.* at 5–6.
[14] *Id.* at 7.
[15] Dkt. No. 130 at Ex. A.
[16] *Id.*
[17] *Id.* at Ex. B.
[18] *See* Dkt. Nos. 70, 79, 122, and 126.
[19] Dkt. No. 130 at 2.

manner requested by the Western Entities.[20] In response, the government argues that the Western Entities' requests for production and related interrogatories are compound, overly broad, and encompass over 44 discrete requests in violation of the court's discovery plan.[21] Moreover, the government objects to the Western Entities' request that the government organize "by category" its document production.[22]

In the court's view, the Western Entities' motion involves two discrete discovery issues. First, whether the Western Entities exceeded the number of allotted discovery requests and, in turn, whether the government properly refused to respond to any of the Western Entities' requests for production. Second, whether Rule 34 requires the government to organize its documentary evidence by the categories identified by the Western Entities.

### A. Compound Discovery Requests

Rule 33(a)(1) of the Federal Rules of Civil Procedure provides: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including *all discrete subparts* . . ." (emphasis added). Similarly, Rule 34 allows a party to request relevant documents, electronically stored information, and tangible things from any party. *See* Fed. R. Civ. P. 34(a) & 26(b)(1).

Whether the government's method to objecting to the Western Entities' requests for production was proper is debatable. There is case law to suggest that answering some but not all of the Western Entities' requests for production may result in the government waiving its objection that the Western Entities exceeded the discovery order's numerical limitation. *See Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005). Similarly, there is case law suggesting that the proper method for challenging a party's excessive discovery

---

[20] *Id.*
[21] Dkt. No. 132 at 1.
[22] *Id.* at 2.

requests is to answer the requests chronologically until the allotted number is exhausted. *See Avila v. Mohave Cty.*, No. 3:14-CV-8124-HRH, 2015 WL 6660187, at *9 (D. Ariz. Nov. 2, 2015) (citing cases). Without a clear answer, the court finds no fault in the government's wholesale objection. Furthermore, regardless of the propriety of the government's objection method, the real inquiry in this dispute is whether the Western Entities' First Set of Discovery Requests exceeded the court's discovery order.

The court has carefully reviewed the Western Entities' First Set of Discovery Requests and finds them remarkable. The Western Entities stressed at the beginning of discovery that a run-of-the-mill discovery plan was sufficient to resolve the ownership of the Liberty Property. After successfully obtaining a standard discovery plan, the Western Entities have served the government with discovery requests that, in the court's view, unapologetically disguise multiple discovery requests into seemingly singular interrogatories and requests for production. For example, the Western Entities' Interrogatory No. 6 states:

> State the factual basis for each of the following allegations that are stated in Section B of the Government's *Response to Motion to Strike Regarding Rule 56(d) Argument* (Docket No. 87) at 3–4:
> 
> - "That Ronald Talmage owns Asia Pacific Partners, LLC, and therefore controls at least one of the Western Entities directly";
> - "That Ronal Talmage, via Heng Cheong Pacific Limited ('HCPL'), actually paid for the Liberty Property";
> - "That the alleged 'lease' with 'Ms. Chen' is fictitious, and merely served as a way for Ronald Talmage to purchase and live in the Liberty Property while hiding it from his creditors";
> - "That the alleged 'loans' by HCPL to Fortus Property Group, LLC to pay for the Liberty Property are similarly fictitious";
> - "That HCPL, as controlled by Ronald Talmage, reimbursed Fortus Property Group, LLC for the entire purchase price of the Liberty Property";
> - "That the Western Entities' structure is in reality an asset-hiding scheme for Ronald Talmage"; and

- "That Mr. Wadsworth's 'business' is fictitious and in reality part of an asset-hiding scheme gone south."[23]

Setting aside the generic factual nucleus shared by each subpart, Interrogatory No. 6 is in effect seven interrogatories disguised as one. Each subpart to Interrogatory No. 6 involves a discrete or separate question of fact and, therefore, each subpart must be treated as a separate interrogatory. *See Wildearth Guardians v. Pub. Serv. Co. of Colorado*, No. 09-CV-01862-ZLW-MEH, 2010 WL 5464313, at *1–2 (D. Colo. Dec. 29, 2010) (adopting the approach outlined in *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)).

Likewise, the Western Entities' Document Request No. 7 states: "Produce all documents obtained by the Internal Revenue Service, the Department of Justice, and/or any other Government agency pursuant to the investigation or examination of Ronald B. Talmage and Annette C. Talmage and the Liberty Property."[24] Document Request No. 7 at a minimum contains at least three separate requests—one for each government agency that may have investigated the Talmages. Moreover, Document Request No. 7 is broad and vague. The Western Entities fail to identify the "other" government agencies that may have relevant discovery.

Similarly, the Western Entities' Document Request No. 4 asks the government for "each summons, subpoena, and third-party discovery request identified in the Government's answer to Interrogatory No. 7, *supra*, organize and produce by the specific summons, subpoena, or request copies of all documents and materials obtained by the Government in response to the same."[25] Document Request No. 4 contains an indeterminate number of requests and is overly broad.

---

[23] Dkt. No. 130 at Ex. A.
[24] *Id.*
[25] *Id.*

6

Based on the forgoing, the court finds that the Western Entities' requests for production exceed the limits imposed by the court's discovery plan. Rather than enter the fray regarding specifically how many requests for production the Western Entities have served or determining what would be considered the Western Entities' "first" 25 requests for production, the court will level the playing field. The court finds that the most equitable solution to the Western Entities' gamesmanship is to amend the discovery plan to allot 50 requests for production to each side. Accordingly, the discovery plan is amended to allow each party to serve 50 requests for production.

### B. Categorization and Organization Pursuant to Rule 34

To discourage gamesmanship and promote efficiency, Rule 34 of the Federal Rules of Civil Procedure provides: "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). The "usual course of business" method outlined in Rule 34 is not limited to commercial entities. Courts have found that entities which function in the same manner as a commercial enterprise, like the federal government, may satisfy Rule 34 by demonstrating that its document production is produced in the same manner as it is kept in the usual course of business. *See S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 412–13 (S.D.N.Y. 2009); *Del Socorro Quintero Perez v. United States*, No. 13CV1417-WQH-BGS, 2016 WL 304877, at *4 (S.D. Cal. Jan. 25, 2016) (applying Rule 34 "usual course of business" standard to the government's document production).

In response to the Western Entities' discovery requests, the government represents that it has "produced documents electronically, in an organized and searchable format, with Bates

numbers signifying the source of the documents." [26] Furthermore, the government states that all of the documents the government has produced to the Western Entities have been provided in the same format as the documents are "maintained in [the Department of Justice's] database."[27] The Western Entities have not provided the court any indication that the government's recordkeeping and organization is substantially different than a commercial enterprise. Therefore, at this stage, the court is satisfied that the government has fulfilled its Rule 34 obligations.

---

[26] Dkt. No. 132 at 2.
[27] *Id.*

## CONCLUSION

Based on the foregoing, the Western Entities' Short Form Motion to Compel the Government to Respond to Document Requests[28] is **DENIED** consistent with this order.

As a final note, the court wishes to remind counsel that the discovery process is not intended to be a means to play hardball or hide the ball, or for lawyers to fill billable hour quotas or to attempt to gain an improper advantage in the litigation. *See* Fed. R. Civ. P. 1. Eventually, the parties must proceed to the litigable issues. Hypercritical application of the discovery rules and obstructionism is costly and by no means serves the parties' legitimate goals in litigation.

At the motion hearing held on March 15, 2017, the court warned the parties that if they began using the court as a tactic rather than a tool to perform discovery, the court would begin awarding costs and fees to the prevailing party. Based on the parties' collective performance thus far, the court believes that this warning was not well taken. In the future, if the court finds that a discovery motion is necessitated by stonewalling rather than a meritorious dispute, the court will award costs and fees to the prevailing party.

**IT IS SO ORDERED.**

DATED this 8th day of June, 2017.

BY THE COURT:

Paul M. Warner
Chief United States Magistrate Judge

---

[28] Dkt. No. 130.